PARIENTE, J.,
concurring.
I fully concur in the majority’s opinion but write separately to emphasize that this case is not, as the dissent argues, about the Court applying the jury pardon doctrine. Instead, as the majority aptly explains, this is a case where an erroneous jury instruction was given that deprived *744 the jury of the ability to find the defendant guilty of manslaughter by act, an offense that is one step removed from second-degree murder and supported by the facts of this case. Far from “encouraging] irrational jury verdicts,” as the dissent suggests, dissenting op. at 746, the majority decision upholds the integrity of the jury process by guaranteeing that the jury is properly instructed on the elements of the charged offense and the lesser included offenses when those elements are in dispute. This decision makes clear that it is the jury who decides, after accurate instructions on the law, what crimes are proven by the facts in evidence in a given case.
While the dissent appears to engage in its own weighing of the evidence in this case by stating that the facts place it clearly in the category of second-degree murder, dissenting op. at 746-48 & 748 n. 8, our role as an appellate court is not to reweigh the evidence to arrive at our own determination of the best outcome. Rather, our role is to ensure, consistent with fundamental principles of constitutional law, that the jury is correctly instructed on the law so that it can ultimately make the determination based on the facts placed into evidence about what crimes were committed.
In State v. Montgomery, 39 So.3d 252, 259 (Fla.2010), the same Court that decides the case today unanimously explained that the identical erroneous manslaughter by act instruction presented in this case constituted fundamental error. In Montgomery, the defendant was charged with first-degree murder, received an erroneous jury instruction on the lesser included offense of manslaughter by act, and was convicted of second-degree murder. This Court reversed and held that the erroneous jury instruction required a new trial. Id. at 260. There is simply no cogent rationale for explaining how, as happened in this case, properly instructing the jury on another lesser included offense — one not supported by the facts— cures the fundamental error identified in Montgomery.
Although the dissent argues that “[t]he uncontested facts here unequivocally set this case in the category of second-degree murder as distinct from manslaughter by act,” dissenting op. at 747, the defendant is entitled to have the jury make such a determination in light of proper instructions on the lesser included offenses when the elements of those offenses are placed in dispute by the evidence. As Judge Al-tenbernd explained in his opinion below specially concurring in part and dissenting in part:
This is a case in which the evidence unquestionably supports the jury’s verdict finding that Mr. Haygood committed second-degree murder. At the same time, the evidence would also have permitted the jury to return a verdict of manslaughter by act if the jury had received the correct instruction. I am hard pressed to believe that any reasonable jury would have found that the evidence in this case supported a theory of manslaughter by culpable negligence.
In this context, I do not believe that the fundamental error identified in Montgomery is rendered harmless by the instruction on manslaughter by culpable negligence. It is useful to consider that a fundamental error must be harmful before it can be classified as fundamental. I simply fail to see the logic by which a fundamental error of this kind, becomes harmless merely because a jury receives an alternative instruction that has little or no application to the evidence presented at trial.
Haygood v. State, 54 So.3d 1035, 1038 (Fla. 2d DCA 2011) (Altenbernd, J., specially *745 concurring in part and dissenting in part) (citation omitted).
In accordance with this line of reasoning, the majority explains, while there was evidence to support the jury’s verdict of second-degree murder in this case, “[t]he evidence also supported a finding that [Haygood] had no intent to kill the victim.” Majority op. at 741-42. Therefore, if the jury believed Haygood’s assertions that he “didn’t mean to kill” the victim, the jury’s only option in light of the erroneous manslaughter by act instruction, which pertained to the material element of intent that was placed in dispute by Haygood’s assertions, was to convict Haygood of second-degree murder. There is simply no way to know what verdict the jury would have returned had it been properly instructed that manslaughter by act does not require an intent to kill. The Second District explained this point as follows:
Arguably, the evidence presented at trial is inconsistent with a theory of manslaughter by culpable negligence. Additionally, as for manslaughter by act, the instruction as given was flawed. Thus, if the jury believed Mr. Haygood’s act was an intentional one but not that he possessed the intent to kill, then neither form of manslaughter provided a viable lesser offense of which the jury could find Mr. Haygood guilty. Although the evidence unquestionably supports the jury’s verdict finding Mr. Haygood committed second-degree murder, it is impossible to speculate what the jury would have found had it been properly instructed that manslaughter by act does not require the intent to MU.
Haygood, 54 So.3d at 1037 (emphasis added).
Contrary to the dissent’s assertion that the majority opinion is “corrosive of the rule of law,” dissenting op. at 746, the Court’s holding today is in actuality essential to upholding it. By ensuring that the jury is provided with a complete and accurate accounting of the applicable law prior to rendering its verdict, we make certain that jury verdicts are obtained in full compliance with and appreciation for the applicable law.
Although the dissent suggests that our decision today is grounded in the jury pardon power and that we should “repudiate” this doctrine, dissenting op. at 746, our decision is actually based simply on an application of our prior unanimous holding in Montgomery to the circumstances of this case. While it is true that the Second District did reference the jury’s pardon power as part of its reasoning, Judge Al-tenbernd observed the problem with this analysis in the following way:
I am also not convinced that “pardon power” analysis is the best approach to this particular problem. I recognize that this panel lacks the power to reverse and remand for a new trial under existing precedent, but I believe the case law needs a tweaking to permit a new trial in this type of case in order to fully comply with the supreme court’s holding in Montgomery.
Haygood, 54 So.3d at 1038 (Altenbernd, J., specially concurring in part and dissenting in part).
The majority recognizes Judge -Alten-bernd’s concerns and clarifies the reason that the giving of the erroneous manslaughter by act instruction constitutes fundamental error. It is not, as the dissent contends, an application of the pardon power, but rather the overriding requirement that every defendant receive the benefit of accurate jury instructions regarding the elements of a disputed offense if those instructions could have resulted in a lesser verdict.
*746 As the majority notes, our cases have long held that a standard jury instruction that contains an erroneous statement as to an element of a disputed offense constitutes fundamental error regardless of “whether the evidence of guilt is overwhelming or whether the prosecutor has or has not made an inaccurate instruction a feature of the prosecution’s argument.” Reed v. State, 837 So.2d 366, 369 (Fla.2002). Contrary to the dissent’s own weighing of the evidence, the evidence here supported a finding of manslaughter by act. Accordingly, I concur in the majority’s conclusion that the erroneous manslaughter by act instruction given in this case constitutes fundamental error under Montgomery.
LABARGA and PERRY, JJ., concur.